IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| DEBORAH STEWART, | ) | |
| | ) | No. 2:11-cv-03020-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY and LES JORDAN, III, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants' motion for summary judgment. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

Plaintiff Deborah Stewart filed a complaint in the Court of Common Pleas for Colleton County on October 4, 2011. Defendants State Farm Fire and Casualty Company (State Farm) and Les Jordan, III filed a notice of removal on November 7, 2011, asserting that this court has jurisdiction based on diversity of citizenship. Defendants then filed an answer to the complaint on November 10, 2011. On November 21, 2011, Stewart filed a motion to remand to state court, which this court denied by written order on January 26, 2012.[1]

Stewart brings this action for breach of contract and bad faith resulting from the alleged mishandling of a claim made under her automobile insurance policy with State

---

[1] In its prior order, the court held that Jordan's citizenship should be disregarded because "Stewart cannot possibly maintain an action against Jordan for breach of contract or breach of the duty of good faith and fair dealing." Order at 3, ECF No. 14. Plaintiff now "consents to a dismissal of the case against defendant Jordan." Pl.'s Resp. Opp'n 6. The court dismisses all causes of action against Jordan.

Farm.  Stewart obtained two underinsured motorist (UIM) policies with State Farm, each for up to $15,000 in UIM coverage.  She alleges that on January 3, 2006, she was struck by an underinsured motorist named Mary Harris while walking across the intersection of U.S. Highway 15 and Secondary Road 283 in Walterboro.  Compl. ¶ 10.  An EMS report states Stewart was dragged by Harris's vehicle for 30 to 40 feet.  Kraut Report 3-4.  Stewart was airlifted to MUSC for treatment.  Id. at 3.

Harris, the driver, had primary liability insurance coverage with Hartford Insurance Company (Hartford) of up to $15,000 and excess liability insurance coverage with Allstate Insurance Company (Allstate) of up to $50,000.  According to Stewart's UIM policy, only in the event that a third party's liability exceeded his or her coverage would State Farm be obligated to pay first-party benefits, up to an additional $30,000.

Although Stewart's accident occurred in January 2006, State Farm did not receive notice of a UIM claim until ten months later, on October 2, 2006.  See Defs.' Mot. Summ. J. Ex. 2, Barnette Aff. ¶ 3.  On that date, plaintiff's counsel sent a demand letter to State Farm for $275,000 in UIM benefits, even though Stewart's medical bills totaled $26,007.60—well under the $65,000 threshold that would trigger State Farm's duty to pay.  Defs.' Mot. Summ. J. Ex. 2 at 7.

Stewart sued the at-fault driver, Harris, in state court on March 8, 2007.  Stewart v. Harris, No. 2007-CP-15-198.  Harris's insurers investigated and valued Stewart's personal injury claims.  Multiple Allstate investigators valued the claims at less than Allstate's $50,000 cap, as well as the $65,000 liability coverage threshold.  See Defs.' Mem. Supp. Mot. Summ. J. 3-8.  State Farm similarly estimated liability at $26,007 to $30,000.  Barnette Aff. ¶ 12.

On October 5, 2007, plaintiff's counsel sent a second demand letter to State Farm, this time seeking "to settle the claim within the UIM policy limits of the State Farm Insurance Policy." Defs.' Mot. Summ. J. Ex. 2 at 9. Although a year had passed since the first demand letter, the amount of medical expenses incurred by Stewart remained at $26,007.60. See id.

On July 30, 2008, Allstate, Harris's secondary liability insurer, settled with Stewart for $40,000—i.e., $10,000 less than the policy limit—in exchange for a Covenant Not to Execute, Policy Release, and Hold Harmless Agreement. Id. at 14. Stewart's claims in state court proceeded against Harris, with State Farm as the only remaining insurer not to settle.

A third demand letter was sent to State Farm on August 23, 2008. Id. at 11. In a letter dated August 25, 2008, Janet Barnette, a claim representative of State Farm, responded that "noting the primary liability coverage of $65,000, our evaluation of the case currently is within the liability coverage available. As such, no offers from the UIM coverage will be made." Id. at 13.

On October 14, 2008, a trial was held in the case of Stewart v. Harris and the jury entered a verdict in the amount of $190,000. The next day, State Farm tendered its entire $30,000 in UIM coverage. Id. at 18.

Stewart filed the instant case on October 4, 2011.

## II.  STANDARDS

A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007).

Summary judgment shall be granted if the movant shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.

### III.  DISCUSSION

Plaintiff brings two causes of action, one for breach of contract and another for bad faith.

### A.  Breach of Contract

Stewart's breach of contract cause of action hinges on her assertion that State Farm "failed to properly investigate, evaluate, and resolve the Plaintiff's claim in a reasonable, timely, and good faith manner causing the Plaintiff to suffer damages."  Compl. ¶ 16.  In her opposition to summary judgment, Stewart complains that "State Farm sat back and relied upon the efforts of the liability carriers and their attorney to evaluate and investigate the claim."  Pl.'s Resp. Opp'n 2.

State Farm has presented the affidavit of Janet Barnette, who was involved in the investigation and evaluation of Stewart's UIM claim.  Barnette states that she "gathered information on the details of the accident, on the amount of the plaintiff's medical bills and on the nature of the plaintiff's injuries."  Barnette Aff. ¶ 6.  Barnette reasoned that

Stewart was not likely to incur continuing medical expenses in part because a chiropractor's notes stated that "the patient's complaints are completely resolved and there is no need for further treatment." Similarly, MUSC records "did not indicate any serious or permanent injury." Id. ¶¶ 12-13. Barnette also reasoned that because Stewart had settled with Allstate for less than the full amount of liability coverage, this indicated "the plaintiff and her attorney did not consider the reasonable value of the case to exceed the liability limits of the policies." Id. ¶ 14.

Under South Carolina law, carriers must offer UIM coverage up to the limits of the insured's liability coverage. "The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist." Floyd v. Nationwide Mut. Ins. Co., 626 S.E.2d 6, 10 (S.C. 2005).

Stewart's UIM policy with State Farm states that State Farm owes damages for bodily injury sustained by Stewart only if Stewart "is legally entitled to collect" such damages "from the owner or driver of an underinsured motor vehicle." Defs.' Mot. Summ. J. Ex. 4 at 28. The policy further states, "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL APPLICABLE BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY INSURANCE POLICIES OR BONDS THAT APPLY TO THE **BODILY INJURY** OR **PROPERTY** DAMAGE HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS . . . ." Id. In the event Stewart sues an underinsured driver, the policy provides that State Farm has the right to defend the driver "on the issues of the legal liability of and the damages owed by such . . . driver." Id. at 29.

It is undisputed that, at a minimum, Barnette ordered that photographs be taken of the accident scene; that she contacted the at-fault driver; that she gathered information on the accident; that she reviewed MUSC records; and that she reviewed a chiropractor's records. See Kraut Report 3-4; Barnette Dep. ¶¶ 6, 12-13. Plaintiff fails to show that State Farm did not conduct a reasonable investigation. The evidence shows that State Farm was entitled to defend the at-fault driver on liability and delay payment of UIM benefits until it was determined that Stewart was legally entitled to such benefits. Even plaintiff's expert concedes this point. See Kraut Dep. 173:7-8 (stating that "contractually," State Farm did not owe the $30,000 in UIM coverage "until the verdict was returned").

For these reasons, the court grants summary judgment to State Farm on plaintiff's breach of contract claim.

### B. Bad Faith

Under South Carolina law, an insurer that unreasonably refuses to settle a claim with an insured within policy limits is subject to liability in tort. Tyger River Pine Co. v. Md. Cas. Co., 170 S.E. 346 (S.C. 1933). "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 619 (S.C. 1983).

The elements of an action for bad faith refusal to pay a claim are:

(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; [and] (4) causing damages to the insured.

6

<u>Howard v. State Farm Mut. Auto. Ins. Co.</u>, 450 S.E.2d 582, 586 (S.C. 1994).

"If there is a reasonable ground for contesting a claim, there is no bad faith."

<u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 397 (S.C. 1992). "The law certainly does not require every insured with UIM coverage who has initiated an action against an at-fault driver to receive a settlement offer for some money" by the UIM provider. <u>Synder v. State Farm Mut. Auto. Ins. Co.</u>, 586 F. Supp. 2d 453, 458 (D.S.C. 2008). Only in a case "where it is *clear* that damages have been suffered by the insured that are *greatly in excess* of the tortfeasors' policy limits" must "the underinsured carrier . . . make a settlement offer prior to its insured obtaining a judgment against, or exhausting the policy limits of, the tortfeasor." <u>Myers v. State Farm Mut. Auto. Ins. Co.</u>, 950 F. Supp. 148, 151 (D.S.C. 1997) (emphasis added).

Here, it was not clear that damages were suffered by Stewart in excess of the at-fault driver's liability policy limits. All evidence pointed to the contrary—that Stewart's damages did not exceed $65,000. As such, State Farm was not obligated to pay benefits until the jury rendered its verdict. <u>See</u> <u>Collins v. Auto-Owners Ins. Co.</u>, 759 F. Supp. 2d 728, 741-42 (D.S.C. 2010) (finding no bad faith where value of plaintiff's UIM claim "could reasonably be debated").

The court grants summary judgment to State Farm on plaintiff's bad faith claim.

### IV.   CONCLUSION

Based on the foregoing, the court grants summary judgment in favor of defendants on all claims.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 24, 2013**
**Charleston, South Carolina**